NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY T. KENDELLEN,<br><br>                    Petitioner,<br><br>    v.<br><br>INTERSTATE WASTE SERVICES OF NEW JERSEY,<br><br>                    Respondents. | CIVIL NO. 06-5694 (SRC)<br><br>**OPINION** |

## CHESLER, District Judge

This matter is before the Court on the application of Petitioner, Gary T. Kendellen, Regional Director of Region 22 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board ("Petitioner" or "the Board"), for a temporary injunction [docket # 1] pending final disposition of the related unfair labor practice matter pending before the National Labor Relations Board pursuant to Section 10(j) of the National Labor Relations Act. Respondent, Interstate Waste Services of New Jersey ("Respondent" or "Interstate Waste") filed a timely opposition, [docket # 2], and the Board filed a reply brief. [docket # 5]. The Court held oral argument on the petition on January 3, 2007. The Court, having considered the filings of the parties, along with oral argument of counsel, and for good cause shown, **DENIES** the petition for temporary injunctive relief.

I.    **FACTUAL BACKGROUND**

This matter is before the District Court on a petition for an injunction under Section 10(j) of the National Labor Relations Act ("the Act"), 29 U.S.C. §160(j), filed by the Regional Director of Region 22 of the Board.

Respondent Interstate Waste, headquartered in Sloatsburg, New York, is engaged in the transportation and handling of solid waste for residential and commercial customers. The unfair labor practice proceeding underlying this petition is related to a June 3, 2005 representation election held at the Newark facility of Interstate Waste. Teamsters Local Union No. 955, International Brotherhood of Teamsters, Local 945 ("the Union" or "Local 945") won the representation election in a unit of 72 drivers and helpers. On June 9, 2005, Interstate Waste challenged the results of that election based on what it considered objectionable conduct by the Board Agent and by Local 945's observer. The Board overruled the objections of Interstate Waste and on November 21, 2005 certified the union as the exclusive bargaining representative of the employees.

On September 3, 2005 Interstate Waste completed its purchase of Classic Sanitation, a solid waste company based in Jersey City. Classic employed a smaller unit of 32 drivers and drivers' helpers also represented by the Union. At the time Interstate Waste purchased Classic, Interstate Waste had already decided it would integrate and transfer all of its Newark operations to the Jersey City facility. Between September 3, 2005, and February 1, 2006, Interstate Waste transferred 57 Newark employees to the Jersey City facility, and closed its Newark facility. These transferred

employees, along with the 32 from the original Jersey City unit, constitute the "Merged Unit" of 89 total Jersey City employees.

The Union requested that Interstate Waste bargain with it in early December, 2005. Interstate Waste refused to recognize and bargain with the Union, claiming the need to engage in a "technical refusal to bargain" in order to trigger the filing of an unfair labor practice charge which would allow Interstate Waste to challenge the Board's overruling of Interstate Waste's objections and the certification of the election results.[1] The Union filed two unfair labor practice charges, each asserting that Interstate Waste's failure to bargain violated the Act. The first charge, 22-CA-27216, was filed on December 22, 2005, and alleged that Interstate Waste violated Section 8(a)(5) of the Act by refusing the Union's request to bargain. The second, 22-CA-272248, was filed on January 24, 2006, and alleged that Interstate Waste had failed to bargain with the Union over the decision and effects of the transfer of employees from Newark to Jersey City.

The General Counsel of the Board issued the complaint relating to the first charge on January 5, 2006, alleging that Interstate Waste violated section 8(a)(1) and (5) of the Act by refusing the Union's request to bargain following the Union's certification. On February 1, 2006, the General Counsel filed a motion for summary judgment which was granted on May 18, 2006. See Interstate Waste Serv. of N.J. and

---

[1] The NLRB's certification decision is not a final order within the meaning of 29 U.S.C. § 160(e),(f) (1976). Therefore, in order to obtain judicial review of such a decision, an employer must expose itself to an unfair labor practice charge and then raise the propriety of the certification decision as a defense to those charges. See, e.g., Medical Center of Beaver County v. NLRB, 716 F.2d 995, 997 n.2 (3d Cir. 1983).

Int'l Bhd. of Teamsters, Local 945, 347 NLRB No. 5 (May 18, 2006).  On May 25, 2006, Interstate Waste filed its petition for review with the United States Court of Appeals for the District of Columbia (Docket No. 06-1181).  That appeal is currently pending, and briefing will be completed in early March, 2007.  On May 26, 2006, the Union renewed its request to bargain with Interstate Waste for a collective bargaining agreement for the Merged Unit.  Interstate Waste continued to refuse to recognize or bargain with the Union.

On June 28, 2006, the General Counsel issued the complaint regarding the second failure to bargain charge, 22-CA-27248.  On July 11, 2006, Interstate Waste answered the complaint, again asserting that it was engaged in a technical refusal to bargain.  It is this second complaint which forms the basis for the current petition for 10(j) relief, which was filed on November 29, 2006.

## II.      STANDARD FOR ISSUANCE OF A §10(j) INJUNCTION

Section 10(j) of the Act enables the National Labor Relations Board or its designated agent to seek interim injunctive relief from a federal district court pending the Board's own administrative adjudication of unfair labor practice proceedings.  See 29 U.S.C. §160(j).  A district court's determination whether to issue temporary injunctive relief under §10(j) involves a two-fold inquiry.  First, the district court must decide whether there is reasonable cause to believe that an unfair labor practice has occurred. See Hirsch v. Dorsey Trailers, Inc., 147 F.3d 243, 247 (3d Cir. 1998); Pascarell v. Vibra Screw Inc., 904 F.2d 874, 877 (3d Cir. 1990).  This prong of the test is satisfied when, viewing the facts most favorably to the Board, there is sufficient evidence to support the

legal theory of violation presented by the Regional Director, and when that theory is substantial and not frivolous.  See Eisenberg v. Lenape Products, Inc., 781 F.2d 999, 1003 (3d Cir. 1986).  Second, having found "reasonable cause," the district court must find that the issuance of an injunction is "just and proper," i.e., that it is in the public interest to grant the injunction, so as to effectuate the policies of the National Labor Relations Act or to fulfill the remedial function of the Board.  See id.; Dorsey Trailers, 147 F.3d at 247; Vibra Screw, 904 F.2d at 877.

### III.   ANALYSIS

#### A.   The Board Has Established Reasonable Cause to Believe Respondent Has Violated the Act.

The Board has satisfied its burden of establishing that there is reasonable cause to believe that Interstate Waste engaged in unfair labor practices, specifically that Interstate Waste violated Section 8(a)(5) and (1) of the Act by failing to bargain, after the Union's certification, with the Union over the decision and effects of the transfer of employees from Newark to Jersey City.

The reasonable cause standard requires the district court to examine whether "(1) the Regional Director's case depends on a substantial, non-frivolous legal theory"; and (2) whether "there is sufficient evidence, taking the facts favorably to the board, to support that theory."  Kobell v. Suburban Lines, Inc., 731 F.2d 1076 (3d Cir. 1984).  This is a "low threshold of proof" and the amount of evidence required by the reasonable cause determination "is less than that required to prove a violation."  Id. (citing Eisienberg v. Wellington Hall Nursing Home, Inc., 651 F.2d 902, 905-06 (3d Cir.

1981)).

Petitioner argues that "[t]here is reasonable cause to believe that Respondent has a bargaining obligation to the Union as representative of the Merged Unit," Pet.'s Br. At 8, and "that Respondent failed to bargain with the Union over its decision to transfer unit work and relocate to Jersey City and the effects of that decision on the bargaining unit." Pet.'s Br. At 10. On November 21, 2005, the Board certified the Union as the exclusive bargaining representative of the employees working at the Newark plant. The Union first requested that Interstate Waste bargain with it in early December, 2005. At this point, Interstate Waste was obligated by the Act to bargain collectively with the Union. See 29 U.S.C. § 158(a)(5); NRLB v. Parents & Friends of the Specialized Living Ctr., 879 F.2d 1442, 1456 (7th Cir. 1989) ("[T]he employer's duty to bargain commences once the union is certified."). However, Respondent's have conceded that they have refused all of the Union's requests to bargain. Therefore, given the low standard of proof, the Board has established reasonable cause to believe that Respondent's actions constituted an unfair labor practice, see, e.g., NRLB v. Parents & Friends of the Specialized Living Ctr., 879 F.2d 1442, 1456 (7th Cir. 1989) (collecting cases regarding employer liability due to failure to bargain after union certification). This is a "substantial, non-frivolous legal theory" that is supported by "sufficient evidence."

Respondent argues that "the 'extraordinary remedy' of 10(j) relief is utterly inappropriate when an employer– here IWS– is simply engaging in a technical refusal to bargain." Resp.'s Br. at 13. Although it is true that Respondent must refuse to bargain in order to obtain judicial review of a Board certification decision, see, e.g.,

Med. Ctr. of Beaver County v. NLRB, 716 F.2d 995, 997 n.2 (3d Cir. 1983), the fact that an employer claims its refusal to bargain is technical "does not immunize the employer from injunctive relief."[2]  Int'l Union, United Auto. of Am, UAW  v. NLRB, 449 F.2d 1046, 1051 (D.C. Cir. 1971); Lebus v. Manning, Maxwell, & Moore, Inc., 218 F. Supp. 702 (W.D. La. 1963).  Exposure to an unfair labor charge and the possibility of temporary injunctive relief is a risk the employer must choose to bear when engaging in a technical refusal to bargain.

In sum, the Board has satisfied its burden of establishing reasonable cause to believe that Respondent engaged in unfair labor practices.

B.   The Board Has Failed to Establish that the Injunction Sought Is Just and Proper.

However, the Board has not met its burden of demonstrating that the injunctive relief sought is "just and proper."  Injunctive relief is "just and proper" under Section 10(j) "when the nature of the alleged unfair labor practices are likely to jeopardize the integrity of the bargaining process and thereby make it impossible or not feasible to restore or preserve the status quo."  Vibra Screw, 904 F.2d at 878.  The Court must be mindful that "the relief to be granted is only that reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power."  Suburban Lines, 731 F.2d at 1091. In this case, it is not clear that an injunction is necessary prevent the dissipation of the Board's remedial powers, and as a result, the Board has not demonstrated that injunctive relief is "just and proper."

---

[2] However, the Court notes that, as the Board conceded in oral argument, as a matter of policy 10(j) injunctions are rarely pursued in cases where the only alleged unfair labor practice is a technical refusal to bargain.

Here, the Board seeks an injunction that would require Interstate Waste to "recognize and bargain with the Union as the exclusive collective bargaining representative of its drivers and drivers' helpers"; "bargain collectively with the Union concerning the effects of the transfer/relocation of its Newark, New Jersey operation to Jersey City, New Jersey"; and to "[c]ease and desist from... interfering with, restraining or coercing its employees in the exercise of rights guaranteed them under Section 7 of the Act." Pet.'s Pet. at 4.  The Board argues that such relief is necessary to prevent irreparable harm to the parties' collective bargaining relationship and that the benefits of such relief outweigh any possible harm to Respondent.  Respondent argues that injunctive relief is inappropriate because it would not preserve the status quo; the injunction is not necessary for the Board to exercise its remedial power; and the injunction would be contrary to the public interest.  For the reasons below, the Court concludes that it would not be "just and proper" to order temporary injunctive relief.

Injunctive relief may be necessary if there is reasonable cause to believe that the employer has made post-election unilateral changes, under review by the Board, that constituted violations of the Act and that substantially altered the status quo. See, e.g., Advertisers Mfg. Co. v. NLRB, 677 F.2d 544 (3d Cir. 1982) (affirming injunction where employer made post-election unilateral changes and order restored status quo).  This is not the case here.  The only alleged unilateral change in the conditions of employment has been the move of employees from the Newark location to the Jersey City location.  The evidence, however, indicates that the transfer of employees has begun prior to the certification of the election, and thus prior to Interstate Waste's obligation to bargain with the Union.  Therefore, it is not clear that the employee transfer constitutes a

unilateral post-election change. Also, there is no evidence that this particular change was motivated by anti-union animus. Finally, the Board has not alleged that Interstate Waste continued to make other unilateral changes after the certification of the election. Contra Advertisers Mfg. Co., 677 F.2d at 547 (affirming district court's grant of injunction where employer made "significant" changes in working conditions after the Board's certification of the election results.)

     In the end, this Court is obligated to follow the Third Circuit's standard for determining, on a fact intensive basis, whether or not the Board has demonstrated that the issuance of injunctive relief would be "just and proper." Under Third Circuit precedent, the Board must demonstrate that after the litigation has been completed and the Board has been vindicated, remedial efforts by the Board would be ineffective. See Vibra Screw, 904 F.2d at 878-79 (10(j) injunctive relief is appropriate where "the chilling effect of management retaliation may outlast the curative effects of any remedial action the Board might take"). In Vibra Screw, the Court stated that "[b]ecause the 'just and proper' inquiry must recognize the public interest implicit in protecting the collective bargaining process, the critical determination is whether, absent an injunction, the Board's ability to facilitate peaceful management-labor negotiation will be impaired." Vibra Screw, 904 F.2d at 879. Here, the interim relief requested by the Board for the present charge has already been granted by the Board in the administrative adjudication of the first unfair labor practice charge. Interstate Waste Services of N.J., Inc. & Int'l Bhd. of Teamsters, 347 NLRB No. 5 (ordering Respondent Interstate waste to recognize the Union and to "bargain on request with the Union"). While Respondent is continuing its refusal to bargain pending resolution of the matter in the D.C. Circuit,

Respondent indicated at oral argument that if the matter is eventually resolved unfavorably to Interstate Waste, Respondent will immediately commence bargaining with the Union over terms and conditions of employment for the merged unit and on the effect of the post-certification transfers from Newark to Jersey City.  Because of this, the Board's ultimate relief will not be meaningless.  There is no evidence that Respondent has undertaken any retaliative acts which would undermine the effectiveness of this relief, or that Respondent has acted in a way which would undermine any eventual bargaining process.

Moreover, as Respondent argues, the Board's delay in seeking this injunction constitutes relevant, though not dispositive, evidence that interim injunctive relief is not truly necessary.  See Suburban Lines, 731 F.2d at 1091, n27; Vibra Screw, 904 F.2d at 881-82.  As the Third Circuit has noted, the theory is not one of laches, "but rather that the district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim injunctive relief has allowed the status quo to change through unexplained delay."  Suburban Lines, 731 F.2d at 1091, n27.  Here, the Board failed to bring a petition for 10(j) relief during the entire pendency of the proceeding on the first unfair labor charge— a charge also stemming from Interstate Waste's failure to bargain with the Union after the election.  The Board did not bring this petition until November 29, 2006.  This was approximately six months after the filing of the complaint on the second charge, and over 10 months after the filing of the complaint on the first charge.  While this delay is not dispositive, it contributes to this Court's finding that granting a temporary injunction in the present case would not be "just and proper."

**III.    CONCLUSION**

For the foregoing reasons, the Court denied Petitioner's motion for a temporary injunction. An appropriate form of order will be filed together with this Opinion.


        /s/ Stanley R. Chesler
   Stanley R. Chesler, U.S.D.J.

Dated: January 10, 2007